STATE SAVINGS ASSOCIATION OF ST. LOUIS v. A. J. HUNT & CO.

1. INDORSEMENT OF BILL OF EXCHANGE, BEFORE MATURITY; *Payment to Indorser, No Discharge of the Bill.* When a bill of exchange of a third party, payable to order, is indorsed before maturity as collateral security for a debt contracted at the time of said indorsement, the indorsee is a *bona fide* holder for value in the usual course of business, and payment by the acceptor to the indorser, without authority from the indorsee, will not discharge the bill.

2. INSTRUCTIONS, *Not Warranted . by the Evidence, Erroneous.* Where Y. B. & Co., payees of a bill of exchange, indorse the bill before maturity to a bank as collateral security for an advance thereon at the time of the transfer, and the bank, upon the payment of the bill, is to

pay the proceeds thereon in payment of such consideration, and after protest of the bill for non-payment, the acceptors remit to Y. B. & Co. the amount of the bill, without authority from the bank, and Y. B. & Co. fail to turn over the remittance from the acceptors to the bank, *held*, in an action on the bill by the bank against the acceptors, that the court erred in instructing the jury to the effect, if they found the truth to be that Y. B. & Co., the original payees, simply indorsed the draft to the bank for collection, with authority or directions to apply the proceeds when collected to the account which the bank had with the said Y. B. & Co., the bank holding and accepting the paper, under such circumstances, became the agent or trustee of Y. B. & Co., as such instruction was not warranted by the evidence, and was liable to mislead the jury to the prejudice of the bank.

*Error from Cherokee District Court.*

ACTION by the *State Savings Association of St. Louis, Mo.,* against *A. J. Hunt* and *Jonathan Hunt,* as partners, on their acceptance of a draft drawn on them by W. W. Young, Bro. & Co., of St. Louis. The facts, and instructions complained of, fully appear in the opinion, *infra.* The district court, at the April Term 1875, gave judgment in favor of defendants and against the plaintiff for costs. The plaintiff brings the case here on error.

*John N. Ritter,* for plaintiff.

*Hutchinson & Cowley,* for defendants.

The opinion of the court was delivered by

HORTON, C. J.: This was an action on a bill of exchange drawn by Young, Bro. & Co. of St. Louis, Mo., upon A. J. Hunt & Co. of Columbus, Kansas, dated at St. Louis, December 2d 1872, payable in sixty days, to the order of the drawers, and accepted by A. J. Hunt & Co. December 3d, 1872. Before maturity the draft was transferred by indorsement thereon to the State Savings Association of St. Louis by Young, Bro. & Co. A few days after the draft became due it was sent by the plaintiff to the First National Bank at Baxter Springs for collection, and notice of this fact was received by the defendants from the bank at Baxter. Defendants delayed to attend to the notice of the bank at Bax-

ter, and when one of the defendants finally called at the bank to pay the same, he was informed the draft had been returned the day before. A. J. Hunt then obtained exchange on St. Louis at the bank at Baxter, of sufficient amount to pay the draft, and sent it by express to Young, Bro. & Co., at St. Louis, Mo. The latter firm duly received this money, and gave the defendants credit for the remittance. Young, Bro. & Co. suspended business in July 1873. The draft was protested for non-payment, March 3d 1873. In the court below, a verdict was rendered for the defendants, judgment given accordingly, and the case is here upon exceptions to the instructions of the court. The second instruction reads as follows:

"If however you find the truth to be, that W. W. Young, Bro. & Co., the original payees, simply indorsed the draft to the plaintiff for collection, with authority or directions to apply the proceeds when collected to the account which the plaintiff had with the said Young, Bro. & Co., the plaintiff holding and accepting the paper under such circumstances became but the agent or trustee of the said Young, Bro. & Co.; and any defense which the defendants might suggest in answer to this action, were it prosecuted in the name of Young, Bro. & Co., is, under such circumstances, good in this action, although prosecuted in the name of the State Savings Association of St. Louis, the indorsee."

Upon an examination of the record, we do not think there was sufficient evidence relating to the transfer of the paper for the purpose stated in the instruction to have authorized the court to give the same to the jury. This necessarily leads us to examine the testimony upon this subject. W. P. Young, whose deposition was taken by defendants, states:

"We drew a draft for $115 on the defendants for a bill of goods sold them. W. W. Young, Bro. & Co. deposited that draft in the State Savings Association, of which bank Charles Parsons is president, with other drafts, as collateral for W. W. Young, Bro. & Co.'s note discounted on or about that date by the bank, which note has since been paid. Young, Bro. & Co. were customers of the bank. We were in the habit of drawing drafts on our country customers, and taking them to the bank and getting advances on them to the amount of

seventy per cent. Young, Bro. & Co. would give their notes, and it was customary to pay the notes as they fell due out of the first moneys realized on the drafts. This was done by the bank with our knowledge. The bank kept what was called a collateral account with Young, Bro. & Co. Drafts were deposited with the bank, went into this account, and as fast as collections were made of drafts thus deposited, the moneys were drawn from that account and applied in payment of Young, Bro. & Co.'s notes as they matured. The acceptance sued upon in this action was placed in the State Savings Association under the above arrangements which I have described."

*On cross-examination he stated:* "At the time W.W.Young, Bro. & Co. suspended business in July 1873, they were indebted to the State Savings Association about $3,100. At that time the bank held this draft for $115 against the defendants. It has never been returned to Young, Bro. & Co. The bank at that date held some other collateral besides this acceptance, out of which they have realized some money. Our indebtedness to the bank now amounts to more than the amount of the defendants' acceptance, but I cannot give the exact amount.

"*Ques.*–Was it not customary in your firm dealings with the bank, that the collaterals of which this draft in suit is one, were all held as general collaterals, and applied at maturity to any of this species of notes maturing first, and that this was without reference to any particular draft or collateral for any special notes being specially held for such special notes? *Ans.*–Yes.

"*Ques.*–Did you not give a great many scores of these notes, secured by drafts as collateral in the way you have described? and did not these collateral drafts amount to many hundreds? *Ans.*–Yes.

"*Ques.*–Was not the amount received from time to time by the bank, on the collateral drafts, put to your collateral account, and drawn from that account and applied to the payment of your notes as they matured, without regard to any special notes? *Ans.*–Yes."

On the part of the plaintiffs the deposition of Charles Parsons, the president of the Association, was read. Parsons testified that —

"In regard to the acceptance of A. J. Hunt & Co., on bill of exchange drawn by W. W. Young, Bro. & Co. to the or-

der of themselves, and by them indorsed in blank, and which is the same acceptance sued on in this action, the truth is, that this paper, before its maturity, was indorsed as aforesaid to the State Savings Association of St. Louis, Missouri, for a valuable consideration advanced and paid by said Association to said Young, Bro. & Co. The transactions of the firm of Young, Bro. & Co. with the bank were numerous; but in all · instances where paper of this description was received by the bank, there was an advance of money made therefor. There was no understanding or agreement ever existing, that the bank was to be satisfied short of redemption in money of each acceptance; and neither the bank, nor any one else by its authority, nor myself, nor any one by my authority, has ever been paid the acceptance sued on. The paper is unpaid. *The money advanced on it is still due.* If this collection cannot be made on this acceptance, the bank will lose just that much money. There was no agreement or understanding that any payment to Young, Bro. & Co. was payment to the bank, or that any arrangement could be made short of lifting the acceptance by cash. The acceptance never has been lifted, or paid, and is due; (and if not paid by the acceptor in this action, the security of negotiable paper bought for value before maturity fails.) There is no other understanding about it."

The evidence establishes the fact, that there was a present consideration at the time of the transfer. The jury might evidently have been misled by the character of the instruction. If the plaintiff had received the draft simply *for collection*, with authority or directions to apply the proceeds when collected to the account which the plaintiff had with Young, Bro. & Co., a different case would be presented than the one we are now considering. The plaintiff received the draft under other circumstances. There was ·an advance of money made therefor at the time of the indorsement. Young, Bro. & Co. did not indorse the paper for collateral security, as a mere volunteer service. The plaintiff accepted it with its burdens and benefits. It is settled, that when a bill of exchange of a third party, payable to order, is indorsed as collateral security for a debt contracted at the time of such indorsement, the indorsee is a *bona fide* holder for value in the usual course of business. Upon the facts, the plaintiff

was neither the agent nor trustee of Young, Bro. & Co. In the absence of proof to sustain the instruction, the rights of the plaintiff may have been prejudiced. We cannot say therefore that the error was immaterial. It may have induced the verdict for defendants. In this opinion, we have pur-posely refrained from deciding whether, or no, the instruction commented upon, as an abstract proposition, is good law. For the purpose of this case, it is sufficient to say that it is not applicable to the facts proved, and may have been detrimental to the rights of the plaintiff.

The judgment must be reversed, and the case remanded for a new trial.

All the Justices concurring.