Dowell v. Williams.

### JOHN A. DOWELL v. D. P. WILLIAMS.

1. INSTRUCTIONS, *Misleading.* Instructions unsupported by evidence are generally misleading, and therefore improper.

2. CONTRACT; *No Waiver of Conditions.* Where W. entered into a written contract with D. to sell and deliver to him, within a specified time, ninety head of smooth and fat hogs, to weigh on an average two hundred and forty pounds each, and several days before W. was to deliver the hogs he informed D. that his hogs were too light and too rough to comply with the contract, and D. did not then object to the hogs on those grounds, *held,* that his failure to object at that time was not a waiver by him as to the fatness and smoothness of the hogs, if at the time that W. offered to deliver the hogs he objected to them because they did not comply with the contract.

3. OFFER TO PERFORM, *When of no Effect.* Where W. entered into a written contract with D. to sell and deliver to him, within a specified time, ninety head of smooth and fat hogs, to weigh on an average two hundred and forty pounds each, and at the time that W. was to deliver the hogs, D. refused to take the hogs offered, because they were not within the terms of the contract, and then W. offered to get other hogs in lieu of those tendered, if D. would first agree to accept the same, *held,* that D. was not required to answer the proposition submitted; and further *held,* that the mere offering by W. to get other hogs to comply with the contract amounted to nothing, if he did not actually get the hogs so as to deliver them.

4. PRINCIPAL AND AGENT; *Evidence.* Where in the trial of a case it is sought to bind the principal by the acts of a person alleged to be his agent, the principal has the right to prove by the alleged agent for whom he acted and the authority conferred upon him, as tending to show that the principal was not responsible for his acts.

5. PRACTICE; *Case-Made.* Where amendments suggested in writing to a case-made are allowed, it is the better practice to have such amendments inserted in the case-made at their appropriate places before the case is signed and attested, so that they can be paged and read in their proper connection. The amendments not allowed are no part of the case-made, and ought not to be attached to it, or filed with it.

*Error from Brown District Court.*

ACTION by *Williams* against *Dowell,* to recover the sum of $2,017.18, for certain cattle and hogs which *Williams* claims

to have sold and delivered to *Dowell* under the terms of the following written contract:

"ROBINSON, KANSAS, April 4, 1883.

"I have this day sold to John A. Dowell the choice of eighteen steers out of twenty head now feeding in my lot on home farm, and guarantee the same to weigh eleven hundred pounds or upwards, at five dollars and twenty-five cents per hundred pounds. Said cattle to stand in dry yard off feed and water twelve hours before delivery. Also, ninety head of hogs, to weigh on an average of two hundred and forty pounds each, or upwards; said hogs to be smooth and fat, and stags to be docked eighty pounds. Said steers and hogs all to be delivered between the fifteenth of June, 1883, and the tenth of July, 1883.

"I have received on the above contract the sum of two hundred and fifty dollars. Said steers and hogs to be delivered at stock yards in Robinson, Kansas.

"Witness: J. B. MITCHELL.    D. P. WILLIAMS.
                                         JOHN A. DOWELL."

In his petition *Williams* averred that the contract between him and Dowell was in fact that for the hogs *Williams* was to receive at the rate of six and one-fourth cents per pound, and that by mutual mistake the price for the hogs was omitted in writing the contract. Trial had at the January Term for 1884, before the court with a jury. The jury returned a verdict for the plaintiff, and assessed the amount of his recovery at the sum of $2,097.58. The defendant filed his motion to set aside the verdict, and for a new trial, which was overruled. Judgment was entered upon the verdict in favor of the plaintiff. The defendant excepted, and brings the case here.

*W. D. Webb*, for plaintiff in error.

The opinion of the court was delivered by

HORTON, C. J.: The cattle described in the written contract of the parties were delivered and accepted by Dowell, defendant below, who gave to Williams, defendant in error, his check for $1,031.25 — the price of the cattle less the cost of weigh-

ing. Subsequently the payment of the check was stopped, probably on account of the sum of $250 which had been advanced on the contract not being deducted; but as it has never been paid, Williams is entitled to recover for his cattle.

The principal contention of the parties at the trial was over the hogs. When the case was called for hearing, Williams "stated to the jury he did not claim that the hogs mentioned and referred to in the petition and for the recovery of the value of which in part the action had been brought, complied with the contract." The important question of fact in the case, therefore, for the jury to determine, was, whether Dowell waived a compliance with the terms of the contract regarding the hogs alleged to have been delivered. Williams, among other things, testified: That he lived half a mile north of Robinson; that he had two conversations with Dowell after the contract, first, five or six days before July 9th, and then again on the 9th; that Dowell told him he wanted the hogs on the morning of July 9, 1883; that he told him (Dowell) the hogs would not fill the contract, as they were not large enough; hat he told him he could get him others from his neighbors; that Dowell said "he would see about it;" that Dowell further said "that he had sold the hogs to Beattie, and whatever Beattie would take he would take;" that at the time he (Williams) had 120 or 130 hogs; that he took his hogs and cattle to the stock yards at Robinson, on July 9th; that at Robinson he met Dowell, who helped weigh the hogs; that he made no objection to them; that when they got them weighed, they put them into the railroad stock yard — the shipping yard; that Dowell helped to put them in; that when this was done, he (Williams) and Haverfield went back for the cattle; that it was near five o'clock when they got through weighing the cattle; that after the cattle were weighed, they went to a hardware store and Dowell called for the weigh-tickets of the cattle, and the cattle were then figured up; that Dowell then gave him a check for the cattle, except the cost of weighing, but before Dowell gave him the check for the cattle he said "they would not take the hogs, and he could not take them

21 — 33 KAS.

Dowell v. Williams.

on account of their being too light;" that this was about five o'clock; that there was not much said, except "that they would not take them;" that he told him (Dowell) he would fill the contract with heavy hogs before sundown, if he would take them; that Dowell said "Beattie would not take them, and therefore he would not;" he said "that anything he (Williams) could do with Russ. Dowell would be all right;" that he (Dowell) refused to figure on the hogs; that he (Williams) had made arrangements with some parties for heavy hogs to put in on the contract, if he wanted them; that on the night of July 9th, he went to see Beattie about it; that Beattie would not receive the hogs unless twenty small ones were taken out, and five pounds deducted for shrinkage.

Upon this and other similar evidence, the court gave the following, among other instructions, to the jury:

"If you find from the evidence that at or before the offering of said hogs to the defendant at the scales or yards in Robinson, the defendant was informed by the plaintiff that some of the hogs were too light, or too rough or too lean to comply with the contract, but that the defendant then said that he did not object on these grounds, or words to that effect, or that he would just as soon have hogs of the kind offered; or if you find that the plaintiff offered to the defendant to get heavy hogs in lieu of the light ones, but that the defendant, not expressly accepting or refusing the proposition, said that 'he would see about it,' and thus delayed the matter till it was too late to get the hogs on that day, and then refused to take the hogs offered, and that at the time the plaintiff made such proposition he had the disposition and the ability to procure such hogs as would fill the terms of the contract in time, then this would be a waiver by the defendant as to the weight, smoothness and fatness of the hogs offered."

We think that this instruction was misleading and erroneous. It is doubtful whether there was any evidence in the case to sustain the first part of the instruction. Even, however, if Dowell had said, five or six days before the hogs were delivered at Robinson, "that he did not object to them because they were too light, or too rough, or too lean," that would not necessarily be a waiver of the terms of the contract, if, at the time

Williams offered to deliver the hogs, he made his objections to receiving them under the contract.

Again, when Dowell told Williams "that he had sold the hogs to Beattie, and whatever Beattie would take he would take," this was a notification to Williams that unless the hogs were delivered in accordance with the terms of the contract, he would not take them, if Beattie would not. So much of the instruction as conveyed to the jury the intimation that if Williams offered to get heavy hogs in lieu of the light ones to comply with his contract, the conduct of Dowell was such as to constitute a waiver of the contract, is erroneous. Under the contract, it was the duty of Williams to deliver at Robinson hogs that would comply with its terms, and the mere offering to get hogs that would comply, without actually getting them and delivering them, amounted to nothing. Dowell was not called upon to accept or refuse any proposition that Williams made not in accordance with the contract. It was not necessary for Dowell to say whether he would accept other hogs, or not. If Williams had fully complied with his contract, Dowell could not have refused a compliance on his part, without being liable for damages.

If Dowell had fraudulently acted so as to delay Williams from performing his contract, such conduct might have relieved Williams from a compliance with its terms; but we do not perceive any evidence in the record to sustain such a theory. Williams was notified in ample time to deliver the hogs on the morning of July 9th. He did not start with the hogs to Robinson until after dinner, and they were not weighed until the afternoon of that day. Soon after they were weighed, Dowell told Williams "he would not take the hogs, on account of their being too light." If Williams had the disposition and ability to get other hogs from parties near Robinson, to comply with the terms of the contract, as was testified to, he had time after the refusal of Dowell to get other hogs; he did not get other hogs to deliver, and he cannot now claim that Dowell waived a compliance with the terms of the contract by refusing to say whether or not he would accept other hogs.

The 7th instruction was as follows:

"If you find that the defendant assisted in weighing or grading the hogs offered, and knew the hogs did not comply with the terms of the contract, but made no objection on that ground, and received and accepted the hogs, this would be a waiver as to the weight, smoothness and fatness of the hogs."

Of course if Dowell received and accepted the hogs offered to him, that would have been a waiver of the terms of the contract, but the reference of the court to weighing and grading the hogs was out of place in that instruction.

Upon the trial, evidence was offered that one Haverfield helped select the hogs before they were delivered at Robinson. Some of the evidence was to the effect that he was sent there by Beattie to see that the cattle were yarded and guarded away from the water. Other evidence was to the effect that Dowell sent Haverfield to Williams's farm for the purpose of assisting Williams in selecting the hogs. Haverfield was a witness on the part of Dowell, and it was sought to prove by him whom he represented at the time of assisting Williams in selecting the hogs, and whether he had any authority from Dowell or Beattie to receive the hogs. Williams objected to this evidence, and the court sustained the objection. This was error. Williams had testified that Haverfield came up on the morning of the 9th of July to receive the stock. Dowell had the right to show that this was not true, and to show for whom Haverfield acted, and his authority in the premises. In this connection, we may also say that if Haverfield had authority only to assist Williams in selecting the hogs, it was not within his power to change the terms of the contract, as agent of Dowell, or to accept the hogs upon the farm of Williams. The contract provided that the hogs were to be delivered at Robinson. During the argument of counsel for Williams, the remark was made to the jury, with the express sanction of the court, that "if the defendant received the cattle, he was bound also to receive the hogs." Under the circumstances of the case, the reply of the court to counsel was liable to mislead the jury.

To the original case-made are attached suggestions of amendments, marked "allowed," "withdrawn," etc. Those allowed have been inserted in their appropriate places in the case-made, and the case-made is complete. Therefore the attachment of the suggestions of amendments is not only unnecessary, but not good practice. The amendments allowed by a trial court should always be incorporated in the case-made at the proper places, so that they can be paged and read in their proper connection. The suggestions not allowed are no part of the case-made, and ought not to be attached to it. If the amendments allowed are not incorporated at the proper places in the case-made, any intelligent examination of the case is rendered impossible without the greatest labor.

In closing we may refer to the fact that although this case has been submitted at two different terms of the court, and additional time given to Williams for filing briefs, no briefs have been filed by him, or in his behalf, and therefore we have been compelled to dispose of the case without the assistance of any suggestions from his counsel.

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.