## FT. SMITH & W. R. CO. v. COLLINS.

No. 451.    Opinion Filed March 11, 1910.

(108 Pac. 550.)

1.    RAILROADS—Killing of Stock—Evidence. Where, in a suit for the negligent killing of plaintiff's mare, the evidence discloses that an hour or two after one of defendant's passenger trains had gone east she was found at the side of the track about two feet from the ends of the ties, with her hind legs almost severed and skinned about the head, with blood and hair upon the rails; that her tracks indicated she had run from the center of the track, beginning on a dirt road crossing, eastward about 30 or 40 yards to where she lay; that from there the track was straight and the right of way unobstructed westward about 600 yards or half a mile, and eastward some 200 yards; that she could have been seen on the track from where she lay for a quarter of a mile; that a train going at average speed could have been stopped in 500 feet; —held, that there was sufficient evidence of negligence to take the case to the jury, and a judgment for plaintiff will not be disturbed.

2.    TRIAL—Instructions—Conformity to Evidence. It was not error for the court to refuse to give an instruction not based on the evidence or the issues of the case, and which would have probably misled the jury.

(Syllabus by the Court.)

*Error from Pittsburg County Court; R. W. Higgins, Judge.*

Action by M. D. Collins against the Ft. Smith & Western Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*C. E. Warner* and *R. A. Smith,* for plaintiff in erorr.

*A. C. Sewell* and *B. Pope Hammond,* for defendant in error. No briefs reached the reporter.

TURNER, J. On January 28, 1908, M. D. Collins, defendant in error, as plaintiff, sued the plaintiff in error, Ft. Smith & Western Railroad Company, before a justice of the peace for Canadian township, Pittsburg county, for $130 for negligently killing his mare. There was judgment by default for plaintiff,

from which defendant appealed. On trial anew in the county court, where the defense was a general denial, there was judgment for plaintiff for $55 and costs. After motion for a new trial filed and overruled, defendant brings the case here.

It is assigned for error that the verdict is not sustained by the evidence and is contrary to law. While it is conceded the evidence may be sufficient to warrant the jury in finding that the animal was killed by defendant's train, it is insisted that there was not sufficient evidence of negligence to take the case to the jury. The evidence discloses that Collins was the owner of the mare; that on the morning of June 13, 1907, she was found lying on defendant's right of way about two miles west of the town of Blocker; that she had both hind legs cut off, except for a little hide; that she was skinned on the head; that she was lying in a shallow ditch running parallel with the track, some two feet from the end of the ties, at the mouth of a cut about two feet deep; that she was lying some 30 or 40 steps from a dirt road crossing; that her tracks originated between the rails on this crossing in the middle of the track and led therefrom eastward, indicating that she was running to where she was killed, at which place there was blood and hair upon the track; that from where she lay the track was straight and the right of way unobstructed 600 yards or half a mile westward, and eastward some 200 yards; that she could have been seen on the track at this point from an engine for a quarter of a mile; that a train going at average speed could be stopped at 500 feet; that a passenger train had gone east that morning some hour or two before the animal was discovered in this condition. There was no eyewitness to the injury, and defendant, in effect, disclaimed all knowledge of how it happened.

We not only think the evidence sufficient to warrant the jury in finding the animal to have been killed by defendant's eastbound passenger train on that morning, but are also of the opinion that the facts are such that reasonable men might differ upon the question as to whether or not there was negligence on the part of defendant. Where such is the case, the question of negligence

is one of fact for the jury. In *M., K. & T. Ry. Co. v. Ward,* 1 Ind
T. 670, 43 S. W. 954, at the point where the animal was killed,
the track was clear for 50 feet on each side, and the animal could
have been seen for a distance of from a quarter of a mile to a half
a mile by the engineer had he been on the lookout. It was held
that such circumstances were sufficient to take the case to the jury
on the question of negligence. See, also, *M., K. & T. Ry. Co. v.
Farrington,* 1 Ind. T. 646, 43 S. W. 946. In short, we think it is
sufficient on this point to say as was said by the court in *Gulf, C.
& S. F. Ry. Co. v. Washington,* 49 Fed. 347, 1 C. C. A. 286:

"It is the province of the jury to say whether the circumstan-
ces in any given case are sufficient to warrant a finding that the
cattle which no witness saw killed were killed through the negli-
gence of the railroad company, where there is any evidence tend-
ing to show that fact."

There was no exception to the charge of the court; but it is
next contended the court erred in refusing to give the following
instructions:

"The court instructs the jury that the engineer of a train
must use reasonable care and watchfulness to discover cattle upon
the track, and, when they are discovered, to use reasonable care
and diligence to avoid injuring them; but that it is not always
necessary that the engineer should stop the train, or slacken its
speed, on discovering stock on the track. Ordinary prudence re-
quires him to endeavor promptly to drive them off by sounding
his whistle, but does not require him to stop or slacken the speed
of the train, when he may reasonably believe that they will leave
the track in time."

We do not think so, for the reason that, assuming it to cor-
rectly state the law, the same is not applicable to the facts dis-
closed by the testimony. Had the engineer testified and there
arose any question as to what his duties were under the law as
applicable to the facts, it might have been the duty of the court
to have instructed as requested. But the engineer did not testify,
or any one else, on behalf of defendant, in charge of the train.
The testimony as it stood tended to fix liability on defendant. If
the testimony of the engineer would have tended to defeat liabil-

ity, his testimony was all with defendant, and it was its duty to produce it or wear the presumption that if produced it would strengthen the presumption of liability. Starkie on Ev. 54; *Gulf, C. & S. F. Ry. Co. v. Ellis,* 54 Fed. 481, 4 C. C. A. 454. This it did not do or attempt, but by this instruction asked the court to charge as though it had. As well for a defendant on trial for assault and battery, on a plea of not guilty, after proof of the battery, to interpose no evidence and assign for error that the trial court refused to charge on his right of self-defense. In neither case would the instruction be applicable to the facts in evidence, and, although abstractly correct, should be refused.

*Yarborough v. Tale,* 14 Tex. 484, was a suit for slander. The words declared were actionable, and it was proved indisputably that they were uttered by defendant of the plaintiff publicly, in earnest and in anger, and constituted, unexplained, *prima facie,* a wilful and malicious slander. There was no justification or attempted justification, and no proof offered in defense whatever. The jury returned a verdict for defendant. There was nothing in the evidence which would have warranted the jury in finding that the words were uttered in jest. The court, however, charged hypothetically upon such a state of facts, which was held error, and the case reversed.

In *Zimmerman v. Knox,* 34 Kan. 247, 8 Pac. 104, Zimmerman converted his property in Topeka into cash and left with his family for California. On arriving at Garden City he was arrested on a telegram from Knox, who held an unsettled demand against him for $128, and brought back to Dodge City, where he effected his escape and rejoined his family further on his journey. He later sued Knox for false imprisonment. It was not claimed that he had been guilty of any public offense, and the officer held no warrant or process authorizing his detention. The jury returned a verdict in his favor for $15, and he appealed. The court's instructions were based upon the hypothesis that he was arrested by Knox in a civil action on process therein sued

out to prevent him from leaving the country to avoid payment of his debts. The court said:

"This instruction was wholly inapplicable under the testimony, and we think erroneous. We have searched the record in vain to find any testimony which tends in any degree to show that John D. Knox had begun any suit, civil or criminal, in Ford county, against the defendant; and there is no pretense on the part of the defendant that any such suit had been instituted nor that any order of arrest had been issued in any case against the plaintiff. The officer acted alone under the telegraphic communication admitted to have been sent by John D. Knox, directing the arrest and detention of the plaintiff, and it was conceded that whatever proceedings were had in his arrest were for the purpose of enabling the collection of the money due from the plaintiff Zimmerman to Knox. Under these facts the imprisonment was illegal"—

and reversed the case, granted him a new trial, and in the syllabus said:

"Where instructions are given that are not based on the evidence or the issues of the case, and which appear to have probably misled the jury, the judgment will be reversed and a new trial granted. *S. S. Ass'n v. Hunt,* 17 Kan. 532, and cases cited in Crane's annotated edition; *Raper v. Blair,* 24 Kan. 374; *Railroad v. Hay,* 31 Kan. 177 [1 Pac. 766]; *State v. Hendricks,* 32 Kan. 559 [4 Pac. 1050]; *Railroad v. Pierce,* 33 Kan. 66 [5 Pac. 378]; *Feineman v. Sachs,* 33 Kan. 621 [7 Pac. 222, 52 Am. Rep. 547]; *Bigelow v. Henniger,* 33 Kan. 362 [6 Pac. 593]; *Dowell v. Williams,* 33 Kan. 319 [6 Pac. 600]; *Railroad v. Pierce,* 33 Kan. 61 [5 Pac. 378]; *State v. Whitaker,* 35 Kan. 731 [12 Pac. 106]; *Ransom v. Getty,* 37 Kan. 76 [14 Pac. 487]."

See, also, *Case v. Ill. Cent. R. Co.,* 38 Iowa, 581; *Kansas City, Ft. Scott & Gulf Railroad Co. v. Hay,* 31 Kan. 177, 1 Pac. 766; *Missouri Pacific Railway Co. v. Pierce,* 33 Kan. 61, 5 Pac. 378; *People v. Hugh Devine,* 95 Cal. 227, 30 Pac. 378; *Wahldgren v. Market Street Railway Co.,* 132 Cal. 656, 62 Pac. 308, 64 Pac. 993.

The instant request was based upon the law as laid down in the syllabus of *L. R. & Ft. S. Ry. Co. v. Trotter,* 37 Ark. 593. That was a suit in damages against the company for an injury to

a horse. In substance, the facts were that Trotter was the owner of the horse. Defendant's track ran along side of the field in which it and others were grazing, some 40 yards away. The horse's stable was on the other side of the track. That while thus grazing defendaint's train rounded a curve in the track going east and sounded the stock alarm. That the animals ran and attempted to cross the track in front of the train over a dirt road crossing, but were cut off, and ran down the track in front of the train and into a culvert, where the animal in question was injured. The engineer testified that, after continuing to sound the stock alarm, he stopped the train 20 yards before reaching the culvert, which was as soon as possible. We can see how such a charge might have been proper in that case, where the engineer testified to sufficient facts upon which to base it, but not in this, where no such facts were even attempted to be proven, but the charge based on that hypothesis.

Finding no error, for the reasons stated, and that said instruction, if given, would probably have misled the jury, the judgment of the trial court is affirmed.

All the Justices concur.