### PARSONS. Adm'r. v. SIMS.

No. 13135—Opinion Filed Oct. 21, 1924.

**1. Appeal and Error—Right to Allege Error —Instruction as Requested.**

When the defendant prepares and submits an instruction to the court and requests the same be given to the jury, and such instruction is given by the court, the defendant cannot predicate error upon the giving of instruction so prepared and submitted by him.

**2. Malicious Prosecution—False Arrest and Imprisonment—Want of Probable Cause —Larceny—Instruction.**

Where, in an action for false arrest and imprisonment and malicious prosecution, the uncontroverted evidence is that plaintiff was farming certain lands of defendant under an agreement that defendant would furnish feed for the tenant's stock, and it was the custom for the tenant to go to the defendant's oat field and obtain feed for his stock, and after this custom was in effect for some time, defendant caused the plaintiff to be arrested and charged with larceny for so obtaining feed for his stock under the tenancy contract, an instruction by the court that the acts of the plaintiff in so obtaining feed for his stock did not constitute larceny meets the requirements of the law, with reference to what would or would not constitute probable cause, there being no controverting testimony on this point.

**3. Same—Malice in Prosecution—Failure to Consult Counsel.**

Where, in an action for false arrest and imprisonment and malicious prosecution the uncontroverted evidence discloses the fact that defendant, prior to charging the plaintiff with larceny, neglected and refused to lay all the facts, fairly and honestly, before the county attorney or some competent attorney, malice is implied.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Seminole County; J. W. Bolen, Judge.

Action by K. S. Sims against T. H. Parsons, administrator of the estate of Sam Sparks, deceased. Judgment for plaintiff, and defendant appeals. Affirmed.

Wilmott & Roberts, for plaintiff in error.

Pryor, Stokes & Carver, for defendant in error.

Opinion by RUTH, C. This action was instituted by the defendant in error against the plaintiff in error, and, for convenience, the parties will be herein designated as they appeared in the court below.

Plaintiff alleges in his petition the defendant, Sam Sparks, willfully, maliciously, and without probable cause caused the plaintiff to be arrested, charged with the crime of petit larceny, to wit, with the larceny of oats, the property of defendant, and caused plaintiff to be brought before a justice of the peace, and maliciously and without probable cause, prosecuted the plaintiff upon the charge of larceny, and that when the case was called for trial the defendant herein, being the prosecuting witness in the criminal case "failed to take the witness stand" or to produce any testimony whatever against the plaintiff, and the "justice of the peace dismissed the said cause and discharged this plaintiff for the reason that said prosecution and complaint was malicious, unfounded, and without just or probable cause."

Plaintiff further alleges the defendant well knew this plaintiff was not guilty of the crime of larceny, and instituted the criminal proceedings through malice, and with the desire and intent to injure the plaintiff. That plaintiff had to pay out $150 as attorneys fees, that he had 100 acres of cotton, and because of his arrest and imprisonment he suffered a loss to his crops of $1,000, that he suffered mental anguish and physical pain by reason of such arrest and imprisonment, and was injured in his business reputation, and prays damages in the sum of $9,650.

The defendant answered by general denial, and the cause was tried to a jury and a ver-

dict returned for the plaintiff, fixing his damages at $500.

After motion for a new trial was overruled this cause is brought here for review, and the death of the defendant being suggested, the cause was revived in the name of the administrator. The defendant presents in his brief six specifications of error, and argues them under three heads, viz.: First, the court committed reversible error in its instructions on the subject of probable cause, and in refusing to give the instructions requested by the defendant under that head; second, the court erred in refusing to sustain the defendant's demurrer to the evidence, and in refusing to direct a verdict for the defendant, because the evidence showed settlement and compromise of the criminal charge, and in failing to submit to the jury whether said cause had been settled or compromised; third, the court erred in admitting incompetent, irrelevant and immaterial evidence, prejudicial to the right of plaintiff in error.

It was disclosed by the evidence that defendant owned farm lands and rented the lands to tenants under "'crop rent," that plaintiff and defendant had entered into a verbal agreement whereby plaintiff was to farm about 150 acres of the lands of the defendants and give to the defendant one-half the corn and one-half the cotton raised on the land, the defendant to furnish all feed, and necessary farming implements, that plaintiff had about 100 acres planted to cotton and had his corn "laid by."

· That after the crop was "laid by" defendant told plaintiff's sons and perhaps one of the "hands" not to get any more feed for plaintiff's stock, but to "turn them out on the right of way or anywhere else, that they were using too much feed, that plaintiff could use his, defendant's stock, and defendant would feed them, but plaintiff would have to turn his stock out." . That plaintiff, relying upon his contract, sent his boys to the field of defendant, where they had been accustomed to obtain their feed, and loaded a wagon with oats in the shock.

It further appears defendant had planted a considerable number of acres to oats, for the express purpose of feeding the stock of his various tenants, and it was the custom of the tenants to haul the feed for their stock from this field. At the time of taking the load of oats out of which taking the criminal proceedings grew, the plaintiff was working nine hands in his 100 acre cotton patch, and was working two of his own teams and one of the defendant's teams in an effort to secure a good crop of cotton, one-half of which would become the property of the defendant.

That defendant went to town and neither consulted the county attorney nor any reputable counselor at law, but had a justice of the peace issue a complaint, to which the defendant was sworn, and the justice said he would get the county attorney to O. K. it, and the county attorney stated to the justice that he did not care to O. K. such complaints without investigation, but upon the assurance of the justice that "it was all right" the complaint was "O. K.'d" and a warrant was issued, and the plaintiff and two others employed by plaintiff were arrested while at work in the cotton field. That all operations in the cotton field thereupon ceased.

After some continuances had the plaintiff appeared and announced ready for trial. That defendant had retained a firm of attorneys to prosecute the plaintiff, and the county attorney did not appear at the trial, and the privately employed attorneys were reluctant to prosecute plaintiff after investigating, and tried to have plaintiff agree to refrain from getting any more feed from defendant's field, if they would dismiss the case. This the plaintiff refused to accede to, insisting that under his contract he was entitled to the feed.

The county attorney was communicated with by telephone and counsel for the complaining witness, the defendant in this case, informed the justice of the peace that an understanding had been arrived at and the case might be dismissed, and subsequently the defendant herein paid the costs. A Mrs. England, another tenant of defendant, testified that defendant was "very skimpy" with his feed, and plaintiff testified that on more than one occasion he was compelled to purchase feed in town, for his stock.

Instruction No. 1 requested by the defendand and refused by the court, and of which defendant complains, is as follows:

"You are further instructed that if the defendant forbade the plaintiff to take any more of his oats, and the plaintiff thereafter entered upon the premises of the defendant and took the oats referred to in the criminal complaint. you are instructed that such action constituted a violation of the criminal laws of the state, and gave defendant probable cause to institute the prosecution complained of. and in case you so find you will return a verdict for defendant."

This instruction, as requested, was too broad, indefinite, and general, and makes no effort to define the crime with the commission of which the plaintiff stood charged.

Under our laws certain acts are denominated "crimes" and are defined by statute, and punishments prescribed for the commission of crimes. The defendant had charged the plaintiff with the crime of petit larceny, and section 2101, Comp. Stat. 1921, defines larceny as follows:

"Larceny is the taking of personal property accomplished by fraud or stealth, and with the intent to deprive another thereof."

"To constitute larceny, there must have existed a felonious intent at the time of taking." Smith v. State, 10 Okla. Cr. 544, 139 Pac. 709.

It appears from the uncontroverted evidence that there was a contract between the plaintiff and defendant, whereby the defendant was to furnish feed for the plaintiff's work horses, and it was the custom of defendant's tenants, including this plaintiff, to go to the oat field and there secure feed for the stock according to the terms of the contract, and in instruction No. 4 the court charged the jury as follows, after defining "probable cause" in instruction No. 3:

"The first question you will decide is whether or not there was probable cause for the arrest of the plaintiff, and in this connection you are instructed that if it should appear to you that there was a controversy between the plaintiff and defendant, as to whether the defendant should furnish feed to feed the work horses of the plaintiff during the crop season of 1919, and that while said controversy was in progress the plaintiff under a claim of right went to the oat field of the defendant and got oats, then he would be guilty of no crime."

The acts of the plaintiff were the assertion of rights claimed under contract, and while the contract was admitted by defendant, he denied the plaintiff his contractual rights, and redress might have been obtained by appropriate civil proceedings, and it was not error for the court to refuse instruction No. 1 as drafted by defendant and submitted by him, and while instruction No. 4, as given might have been more full and explicit, it substantially states a correct proposition of law under the uncontroverted facts, and in reviewing the record we are of opinion the verdict was right on the merits.

Instruction No. 2, requested by the defendant, was as follows:

"You are further instructed that the terms 'probable cause' as used in this instruction and as applied to this case means a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in believing the party guilty of the offense."

An examination of the record discloses

this instruction was given verbatim by the court, and numbered "3" and the defendant will not be heard to complain of the giving of an instruction prepared and submitted by him. Ward v. Bass, 4 Ind. Ter. 291, 69 S. W. 879; Brissey v. Trotter, 34 Okla. 445, 125 Pac. 1119; Wallace v. Duke, 44 Okla. 124, 142 Pac. 308. Pressley v. Incorp. Town of Sallisaw, 54 Okla. 747, 154 Pac. 660; St. L. & S. F. R. Co. v. Hodge, 53 Okla. 427, 157 Pac. 60.

Under this head defendants insist that while the court defined what was meant by "probable cause" the court nowhere charged the jury, as a matter of law, whether, if they believed the facts testified to, they did or did not constitute probable cause, and we are of opinion instruction No. 3 as given by the court substantially meets the requirements of the rule announced in First State Bank v. Denton, 82 Okla. 137, 198 Pac. 874, wherein it was held:

"It was the duty of the court to advise the jury, as a matter of law, whether the undisputed evidence would amount to probable cause. It was likewise necessary, if the court held the undisputed evidence was insufficient to amount to probable cause, as a matter of law, to then advise the jury what disputed facts they would have to find to exist before they could find there was want of probable cause," citing Langford v. Boston. and A. R. Co., 144 Mass. 431, 11 N. E. 697: Craig v. Ginn, 3 Pennekill (Del.) 117, 48 Atl. 192, 94 Am. St. Rep. 77, 53 L. R. A. 715; Campbell v. Bank and Trust Co., 30 Idaho, 552, 166 Pac. 258.

In the Denton Case, supra, the plaintiff prayed for punitive or exemplary damages, and pleaded want of probable cause, and the answer pleads as defense that it made a full, fair, and complete statement of all the material facts within its knowledge to the county attorney, and acted in good faith upon the advice of the county attorney in the institution of the criminal proceedings.

The question of probable cause was thus directly put in issue and the court properly held that what facts constituted probable cause was a question of law.

No such state of facts confront us in the instant case. Here the plaintiff prays only for actual damages, and the answer is a general denial. The defendant sought no advice from the county attorney or a practicing attorney, but insisted on the issuance of the warrant, notwithstanding the justice of the peace advised defendant it looked more like a civil matter than a criminal one. and defendant, not being content with a prosecution in the ordinary course, and by the of-

ficers whose duty it was to prosecute such cases, employed private attorneys to prosecute plaintiff, and the private attorneys, upon being advised of the facts, declined to prosecute and ordered the criminal case dismissed even though the accused declined to compromise and insisted upon his contractual rights. The every action of the defendant implied malice and lack of probable cause.

In Hostetter et al. v. Carter, 73 Okla. 125, 175 Pac. 244, this court held:

"In an action for damages for false imprisonment in which punitive or exemplary damages are not asked, evidence that the defendant acted with reasonable or probable cause as to the guilt of the plaintiff is not admissible, * * * but where exemplary damages are asked, evidence that the defendant acted with reasonable or probable cause is always competent to mitigate punitive or exemplary damages."

"Evidence that the defendant acted with reasonable or probable cause is always competent to mitigate punitive or exemplary damages." Newell on False Imprisonment, p. 307, sec. 27; Comer v. Knowles, 17 Kan. 436; Livingston v. Burroughs, 33 Mich 511; Sugg v. Pool et al., 2 Stew. (Ala.) 196; Shanley v. Wells, 71 Ill. 78.

We fail to discern the reason for any distinction being made between an action for false arrest and imprisonment, and one for "false arrest and imprisonment and malicious prosecution," where the plaintiff does not ask for punitive damages, and the defendant answers simply by general denial, and does not put the question of probable cause in issue, and the record discloses the fact that the defendant did not seek competent legal advice, and acted contrary to the advice gratuitously offered, and employed private counsel to prosecute the accused. The third instruction requested by the defendant was designed to define malice, and was in the following words:

"You are further instructed that the word, 'malice' as used in this instruction as applied to this case, means, hatred, dislike, revenge and ill will which one man has toward another."

Section 2316, Comp. Stat. 1921, in defining malice, when applied to the intent with which an act is done or omitted provides:

"The terms 'malice' and 'maliciously' when so employed, impart a wish to vex, annoy or injure another person, established either by proof or presumption of law."

In view of the statutes defining malice, we can find no error in the refusal of the court to give the instruction as submitted.

Instruction No. 4, requested by defendant and refused by the court, follows:

"You are further instructed that if the defendant went to the justice of the peace, before whom the complaint was made and the justice of the peace told him that he would not issue the warrant without informing the county attorney of the facts, and that the defendant signed the complaint with that understanding, then in that event you should find for the defendant."

This requested instruction could not have been given upon any theory comportable with the law applicable to the evidence.

There was no evidence even in the slightest degree tending to prove the defendant signed the complaint charging the plaintiff with petit larceny with the understanding that the justice of the peace would lay the facts before the county attorney.

The evidence of the justice of the peace, issuing the warrant, was as follows:

"Q. Mr. Polk, going to your testimony relative to your conversation with Mr. Sparks at the time this complaint was sworn out, what if anything did he say to you in regard to the county attorney? A. Nothing. Q. Did he ever ask you then or there, to tell all the facts he had told you, to the county attorney, before he issued a warrant, or did he want a warrant right then? A. No, sir, he did not tell me. Q. Did he want a warrant issued right then? A. Yes, sir."

It is not error to refuse instructions based upon a state of facts to support which there is no evidence. Eves Tall Chief v. Aaron, 87 Okla. 230, 209 Pac. 915; Cosden Pipe Line Co. v. Berry, 87 Okla. 237, 210 Pac. 141; First National Bank v. Walmorth, 22 Okla. 878, 98 Pac. 917; Ft. Smith & Western R. Co. v. Collins, 26 Okla. 82, 108 Pac. 550; Finch v. Brown, 27 Okla. 217, 111 Pac. 391.

2 Even if he had requested a justice of the peace, not a reputable attorney, and not learned in the law, to make a statement of fact to the county attorney before the warrant issued, it would have availed the plaintiff naught, as it is only upon a full, true, and correct statement made to a county attorney or to a reputable attorney at law, upon whose advice the plaintiff relies and honestly acts, that this defense is available.

"In an action for malicious prosecution where the undisputed evidence shows that the prosecutor sought the advice of competent counsel, and made a full disclosure of all the facts reasonably obtainable, and in good faith acted upon such advice, probable cause for the institution of the criminal prosecution is established, notwithstanding the subsequent acquittal of the accused." El Reno Gas and Electric Co. v. Spurgeon, 30

Okla. 88, 118 Pac. 397; Roby v. Smith. 40 Okla. 280, 138 Pac. 141; Allison v. Bryan 50 Okla. 677, 151 Pac. 610; Sims v. Jay, 53 Okla. 183, 155 Pac. 615; Meinholts v. Henryetta Gas Co., 83 Okla. 89, 200 Pac. 693.

To the same effect with reference to laying all the facts before the county attorney are Central Light & Fuel Co. v. Tyron, 42 Okla. 86, 140 Pac. 1151; Herrick v. Devorak. 56 Okla. 499, 155 Pac. 1153.

Under the authorities herein referred to it naturally follows that the converse of the proposition is true, that where the facts obtainable are not laid before the county attorney or competent counsel. probable cause for the institution of criminal proceedings is not established, and malice may be inferred.

"Malice is an inference which the jury may or may not draw from the want of probable cause." C., R. I. & P. Ry. Co. v. Holliday, 30 Okla. 680, 120 Pac. 927; Jones Leather Co. v. Woody. 67 Okla. 184, 169 Pac. 878.

The record discloses the justice of the peace advised defendant "it appeared to him, to be more of a civil matter," and was reluctant to issue the warrant until its issuance was insisted upon by the defendant.

A careful review of all the evidence discloses want of probable cause, and the refusal of the court to give requested instruction No. 4 was not error particularly in view of the giving of instruction No. 3.

The second assignment of error argued by defendant in his brief is the refusal of the court to submit the question of a compromise and settlement of the criminal proceeding to the jury, and directs our attention to First State Bank v. Denton, supra, where it was said:

"The law is well settled that where a criminal prosecution has been dismissed by the procurement by the party prosecuted, by agreement or by compromise, said party cannot thereafter maintain an action for malicious prosecution."

Counsel cites the following cases supporting this rule: Langford v. Boston & A. R. Co., 144 Mass. 431, 11 N. E. 697; Craig v. Ginn. 3 Pennewill (Del.) 117, 48 Atl. 192, 94 Am. St. Rep. 77, 53 L. R. A. 715; Campbell v. Bank & Trust Co., 30 Idaho, 552. 166 Pac. 258; Sawyer v. Shick, 30 Okla. 353, 120 Pac. 581; Patterson v. Morgan, 53 Okla. 95, 155 Pac. 694.

In First State Bank v. Denton. supra, the defendant in error. Denton. agreed to and did pay a sum of money claimed to be due the bank, in consideration of the withdrawal of the criminal prosecution. All cases cited by defendant were. unquestionably compromised. while in the instant case, the privately employed attorneys representing the defendant and the state attempted to obtain from plaintiff a promise not to take or demand any more feed for his stock from the defendant.

The accused was present, announced ready for trial, and both the accused and his counsel flatly refused the offer, and insisted that they had a right to the feed under their contract, and insisted on a trial, and counsel for the state thereupon informed the justice of the peace that he might dismiss the criminal prosecution and there was no evidence of a compromise, warranting the submission of the question to the jury, and this assignment of error is without merit. and it was not error to refuse an instruction where there is no evidence to support it.

The third and last assignment of error advanced by the defendant is leveled against the admission of certain testimony offered by the plaintiff. The testimony objected to is set forth in the defendant's brief, and relates to the number of acres plaintiff had in corn and cotton, how many teams he was working, that plaintiff was plowing his cotton when arrested and his arrest stopped the work of plowing the cotton. that he was plowing about 18 acres per day, and his arrest caused failure to plow the cotton, that 70 acres remained unplowed, and his loss by reason thereof was $1,000.

As the plaintiff sued only for actual damages the questions and answers were relevant and material, as the jury could not arrive at a determination of the sum of the damages without knowing how many acres of cotton were lost, and in what manner the acts of the defendant occasioned that loss.

There being no error apparent in the record, and the cause being submitted to the jury upon a fair statement of the law and having found a verdict warranted by the evidence the verdict and judgment should not be disturbed. but should in all matters be affirmed.

By the Court: It is so ordered.