Folger, J.
The several exceptions to findings of fact, and to refusals to make findings of fact as requested, are not well taken. To make a legal error in a finding of fact, which this court may review, there must be no evidence in the case upon which the finding may be based. To make such error in a refusal to find, the evidence must be clearly conclusive in favor of the finding proposed. There was, in this case, evidence on which each of the findings can be based, and there is evidence which will sustain each of the refusals to find. The learned justice who tried the cause has seen fit to rely upon that evidence, and we may not review his action in that respect.
The claim of the plaintiff, that the contract of insurance was erroneous through mistake, and should have been reformed, is not tenable. The mistake which will warrant a court of equity *243 to reform a contract in writing, must be one made by both parties to the agreement, so that the intentions of neither are expressed in it; or it must be the mistake of one party, by which his intentions have failed of correct expression, and there must be fraud in the other party in taking advantage of that mistake, and obtaining a contract with the knowledge that the one dealing with him, is in error in regard to what are its terms. The findings show that the defendant made just the contract which it, from the first, intended to make, and just the one which it understood the plaintiff’s assignor meant to make. Whatever may have been the intention of the insured or his agent, there is nothing in the findings, nor in the evidence, which shows or has a tendency to show, that defendant or its agent purposed anything else than to insure property in section C of the Patterson stores. Such being the case, it is not in the power of the court to reform the instrument, for thereby violence will be done to the intentions of the defendant. Eor is there found fraud in the defendant or its agent. Eor is there evidence which would warrant such finding.
The case cited by the plaintiff, of Welles v. Yates (44 N. Y., 525), is not analogous to this. That was the case of a mistake in the attempt by the vendor to perform, by the execution of a conveyance, a pre-existing contract for the sale of land. The assignee of the vendee, knowing that the conveyance did not contain an exception stipulated for in the contract, and that the vendor was in an error in omitting it, still accepted the deed and refused to correct the mistake, intending to reap the profit of it. The conveyance was there reformed, on the ground of the fraud of the assignee of the contract, and on the ground that it was an erroneous performance of a contract, as to the terms of which there was no dispute. These two conditions cannot be predicated of the contract in the case in hand. Eor is this case like unto Coles v. Bowne (10 Paige, 534). There the chancellor refused to enforce a contract for the purchase of land resting in parol, on the ground that the vendee did not understand and intend it as the vendors did. *244 The vendors were seeking to enforce a contract, as they claimed it to he, against one who denied the making of that contract, and averred that he made another and a different one. Specific performance was refused, because the doubt was so great whether both parties understood alike, the agreement to be implied from the defendant’s bid. To allow this contract of insurance to be reformed and then enforced, would be to do just what the court there refused to do; for here as there, the defendant did not understand the terms of it, as they are claimed by the plaintiff to have been, and to impose it upon them in those terms, would be to make a contract for them which they did not intend to enter into. The policy of insurance is, then, to be taken as the contract of the parties. It was, then, a contract to insure property “ contained in letter C, Patterson stores, South Front, below Pine street, Philadelphia.” And that description of the place of deposit of the property, written into the policy in accordance with the application of the insured, was a warranty by him of its particular location, and the truth of that warranty became a condition precedent to any liability to him from the defendant. And it was a warranty and a condition precedent, not to be avoided by the fact that the truth of the description was not essential to the risk, nor an inducement to the defendant to enter into the contract. This rule is so well established in the law of insurance, as that it must be adhered to, though it may work hardship in a particular case. Bor does it depend upon its freedom from a susceptibility to a double interpretation, that a description is a warranty. Whatever is expressed, whether with perspicuity or obscurity, that is what is warranted. Other rules then come in to assist in the discovery of what the language means. If there be latent ambiguity, that may be removed by testimony. And here there is latent ambiguity. The language used is the language' of the parties. It does assert, and therefore warrant, that the property is “ contained in letter C, Patterson stores,” etc. The phrase “ letter C,” taken by itself, has a meaning. But, by reason of collateral matter and extrinsic circumstances, *245 an ambiguity arises. It had an especial or technical meaning to those engaged in the business of putting property on storage in the Penn warehouse, and to those who solicited and who wrote insurance upon it. When the testimony gives that meaning, it indicates but one thing; that part of the Patterson stores, which is designated to owners of property and to insurers of it, as the section or division G thereof. It is impossible to say, in the light of all the circumstances disclosed by the pleadings and the testimony, that letter C of the Patterson stores is not section C thereof) and that a description of property, as that “ contained in letter G, Patterson stores,” does not mean property deposited in that division of that warehouse known and designated as letter C. It is impossible to say, that it does mean property mentioned in a book G. of the proprietors of that building, as plaintiff contends.
The doctrine maintained in The Western Insurance Co. v. Cropper (32 Penn. St., 351) and Franklin Fire Insurance Co. v. Updegraff (43 id., 350) will not aid the plaintiff. Those cases hold that, if the clauses of a policy be obscure, it is the fault of the insurer, for he it is who has penned the language; so that if it be capable of two interpretations, that must be adopted which is most favorable to the insured. There is not room here for but one interpretation. “ Letter C, Patterson stores,” has but one meaning. The latent ambiguity prevents that being seen on the bare reading of the phrase. When that ambiguity is done away with by the testimony, there is no difficulty in intepreting the words and reaching their sense.
The plaintiff invokes the aid of the maxim, “falsa demonsi/ratio non nooetl It may be conceded that there is a false description of the location of the property. But that is not enough to bring into operation the rule embodied in that maxim. There must be in the description so much that is true, as that, casting out that which is false, there is still enough left to clearly point out the place in which is the property. Indeed, an authoritative definition states and qualifies the rule more narrowly than this, viz.: “ As soon as there is an ade *246 quate and sufficient definition, with convenient certainty of what is intended to pass by the particular instrument, a subsequent erroneous addition will not vitiate it.” (Broom’s Leg. Max., 464, * 605.) But it needs not so to restrict in the case in hand. The phrase “ letter 0,” as meaning the place of storage of this property, is a false showing. If that phrase is rejected, then the whole description is contained in the words, “ Patterson stores, South Front, below Pine street, Philadelphia.” These words do, as far as they go in meaning, tell the truth as to the situation of the property. They do not, though, tell the whole truth, nor the whole essential truth. The word “ Philadephia,” alone, would tell the truth, but not the whole of it. To be made certain as to the exact place of deposit of the property, for the purposes of this contract, it needed not only to know in what city it was, and on what street therein, but in what building on that street. And if that building was so constructed as to be of many divisions, practically separate each from the other for safety from fire, and treated as distinct in making contracts of insurance, certainty of description needed some expression of what division it was in. This was the office of the phrase “ letter C.” If that phrase be rejected, and no other truthful phrase be inserted, the description fails to show just where in the Patterson stores the property was placed. That phrase, though false, might harm, for it pointed the description to the wrong place, and some equivalent for it was needed to complete a truthful description.
The evidence taken against the objection of the plaintiff was competent. It was to show that this part of the description, though wrong, was harmful, and therefore not to be rejected. It was to show that, though there was a warehouse known as the Patterson stores, it was one made up of several divisions, as distinct, for the purposes of storage of property and of the insurance of it against fire, as the dwelling-houses in a block; and that to know the place of the property, needed the naming of the section of the building in which it was, as much as if the risk had been on household goods. Their situ *247 atiun would not have been pointed out short of the expression in the description of the number of the house in the block.
We are of the opinion that the defendant established a strictly legal defence to the action of the plaintiff. As we sit here to declare the law, and not to propound a code of morals, we must sustain it.
The judgments appealed from must be affirmed, with costs to the respondent.
All concur.
Judgment affirmed.