## FERRIS et al., Receivers, v. HOLIMAN, Adm'x.

No. 10783—Opinion Filed May 25, 1920.

(Syllabus by the Court.)

**1. Trial—Motion to Direct Verdict—Consideration.**

The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict should the jury find in accordance therewith. Where the evidence is conflicting, and the court is moved to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration, and totally disregarded, leaving solely the evidence for consideration which is favorable to the party against whom such action is leveled.

**2. Master and Servant—Action for Injuries to Railroad Employe—Negligence—Directing Verdict.**

In an action by an administratrix against a railroad company for damages for the death of a deceased employe, where the liability is determined under the terms of the federal Employers' Liability Act and the negligence of the railroad company complained of was a failure to properly inspect a certain car and in using said car on which the handholds were loose and defective and the roof loose and broken, and where the evidence disclosed that the deceased while in the discharge of his duties was in the act of climbing upon the car and using the handholds and the car was jerked and jolted, and the deceased by reason of the jerk and jolt of the car fell on the track and was run over and killed, and there was evidence that the handholds on top of the car were loose and would raise up from one to two inches and would move back and forth two or three inches and that a pull or jerk on the loose handholds would raise the roof of the car a distance of two feet, although this evidence was controverted by defendant, held, it was not error for the court, in view of such evidence, to overrule a motion to instruct a verdict for the defendant.

Error from Superior Court, Muskogee County; Guy F. Nelson, Judge.

Action by Mrs. Maidie Holiman, administratrix of the estate of John Holiman, her deceased husband, against H. C. Ferris and another, receivers of the Missouri, Oklahoma & Gulf Railway Company, for damages for wrongful death. Judgment for plaintiff, and defendants bring error. Affirmed.

Jones & Foster and Arthur Miller, for plaintiffs in error.

Maben & Pitman, for defendant in error.

McNEILL, J. This action was commenced in the superior court of Muskogee county by Mrs. Maidie Holiman, administratrix of the estate of J. H. Holiman, deceased, against H. C. Ferris and Alexander New, receivers of the Missouri, Oklahoma & Gulf Railway Company, to recover damages for the wrongful death of the deceased. The petition alleged plaintiff was the surviving widow of de-

ceased, and had been appointed administratrix; that deceased was an employe of the defendant, and while in the discharge of his duties in assisting in certain switching of the train he was ordered and directed to go upon a certain box car, which car was a part of the train upon which deceased was working, and while the deceased was climbing upon the box car according to orders given him, and while in the discharge of his duties as brakeman, it became necessary for him to take hold of one of the grab irons on the roof of the car to raise himself on the top of the car, being the means used to climb upon said car, and while holding to the same the grab irons and roof gave way and deceased fell. It was alleged that said grab irons were in a defective condition, being loose, and that the roof to which the grab irons were fastened was rotten and broken, and on account of the defective and loose condition of the roof and the grab irons the deceased was thrown to the ground and run over and killed; that the defendant was negligent and careless in using said car when not in proper repair, and in not furnishing proper appliances for the deceased to work with, and was negligent and careless in the inspection of the car; that by reason of said acts of negligence deceased was killed.

The defendants answered by general denial, and alleged contributory negligence. It was agreed during the trial of the case that at the time of the accident the defendant company or train was engaged in interstate commerce, and the case was governed by the law applicable to the federal Employers' Liability Act, and was tried upon that theory. From a judgment in favor of the plaintiff, the defendants have appealed.

For reversal plaintiffs in error argue but two propositions: First, the court erred in refusing to sustain a demurrer to the evidence of the plaintiff; second, that the court erred in refusing to peremptorily instruct the jury to find for the defendants.

In determining whether the court committed error in refusing to direct a verdict for the defendants it will be necessary to examine the evidence and determine whether the evidence is sufficient when viewed in the light of the holding of this court as stated in the case of Shields v. Smith, 50 Okla. 548, 151 Pac. 207, as follows:

"The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict should the jury find in accordance therewith. Where the evidence is conflicting, and the court is moved to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration, and totally disregarded, leaving solely the evidence for consideration which is favorable to the party against whom such action is leveled."

The evidence disclosed that the car did not belong to the defendant company, but was a car in transit and was received by the defendant company at Miami, Okla., to be moved over defendant's line of road. The evidence disclosed that the car was inspected at Miami by the defendant company before receiving or attempting to move the same. When the train of which this car was a part reached Wagoner, it was necessary to do certain switching and to set out one car and transfer the same to the Iron Mountain Railroad. The head brakeman, or the party who had charge of the crew, ordered this to be done by making a flying switch. The evidence as to how this was done is abstracted by plaintiffs in error in their brief as follows:

"We had one car, M., O. & G. 168, which we wanted to switch onto the Iron Mountain; it was the rear car, the tenth car from the engine and the Michigan Central car was next to it. We had to make a flying switch to get the car towards the Iron Mountain connection, which laid off in another direction south of where we were, leading off of the main line. The engine and other nine cars were to be run down on the passing track so they would clear the main line and let this car come on down the main line. I was on the M., O. & G. car 168, the tenth car, and told Mr. Holiman to ride the ninth car, Michigan Central 48007, which he did; I gave the engineer the signal to put the train in motion, which he did, and I then told Holiman to stay with the car he was on and I would cut off the one I was on and ride it myself. When the cars were going at a speed I considered sufficient to make the drop of this car I gave the customary slow signal, the engineer slowed up, the cars jammed together and I pulled the pin, glancing up to see where Holiman was. He was then at the top of the car ahead and had hold of the top grab iron. I immediately signalled the engineer to go ahead and he did so with a jerk; I then looked to see where Holiman was and as I looked I could see the roof of the car where he was in the act of falling or coming down; It looked as though it had been thrown up a bit on account of his weight; his left hand was loose and he seemed to swing around the corner of the car and fell in the center of the track."

As to the condition of the car, the witness Cheshire testified in regard to the condition of the handholds or grab irons the deceased was using or had hold of at the time of the

accident, and in describing the ones that were defective stated as follows:

"A. You could take hold of either of the grab irons and raise them up an inch or inch and a half and move them back and forth (indicating) probably two and a half or three inches. Q. Now when you take hold of them and raise them up, were they stationary or did they move? A. They would move about. Q. You think the play or moving about of these grab irons something like two and a half inches? A. Yes, sir."

In describing the roof of the car where the handholds were fastened the same witness testified as follows:

"Q. What did you find when you examined it? A. I found the roof of the car loose on the corner to the side door almost one-half length of the car.   *   *   Q. Tell the jury what you did with reference to raising this roof up, if anything? A. I grabbed up and raised this roof up about two feet with my hand. Q. Raised it up about two feet? A. Yes, sir."

The duty the railroad company owed to equip its train with safe appliances is defined by section 8606, Rev. Stat. U. S. Ann. 1916, being act of March 2, 1893, ch. 196, section 4 of which, headed "Grab Irons, etc.," provides as follows:

"From and after the 1st day of July, 1895, until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railway company to use any car in interstate commerce that is not provided with secure grab irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars."

Section 2 of the federal Employers' Liability Act states:

"That every common carrier or railroad * * * shall be liable in damages to any person suffering injury while he is employed * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employes of said carrier, or by reason of any defect or insufficiency due to his negligence in his cars, engines, appliances, machinery, tracks, road bed, works, bolts or other equipment."

The duty of the railroad company being defined by statute, it then becomes our duty to view the evidence in the light of the former opinions of this court to determine whether the court committed error in failing to instruct a verdict for the defendants or in failing to sustain a demurrer to plaintiff's evidence. In doing so, we must admit the evidence heretofore set out to be true. Admitting the evidence to be true, it could not be said as a matter of law that the handholds were securely fastened, because this evidence does not support such a contention, nor could it be said the roof was in a safe condition. Whether the appliances were in a safe condition was a question of fact for the jury to determine, and not a question to be decided by the court. It was for the jury to say whether this box car was properly equipped and in a safe condition for proper usage, when the roof was in such condition that an employe in climbing on top of the car by using the handholds with a pull or jerk would raise the roof approximately two feet. It was for the jury to say whether the handholds were securely fastened or in a dangerous condition, when they would pull up from the car an inch and a half or two inches when catching hold of the same, and then they would move from one side to the other a distance of from two and a half to three inches.

Upon the question of whether these defects of the car were such as could be noticed by an inspector when examining the handholds on the roof, the evidence given by one of the inspectors of the train, and an employe of the defendants who was produced by the defendants as a witness, was as follows.

"A. This board right here called a facia and that is 2 3-8 inches (witness indicates on photo). Q. Split in this facia of two and three-eighth inches? A. Yes. Q. I see. And you say that could be seen by persons going up to take hold of these grab irons? A. Yes, sir. Q. Then a car inspector who had gone up to examine these grab irons to see whether they were fastened, what condition they were in could have seen this split in the facia? A. If they went up that place they could not have helped it."

This evidence and the other evidence set out heretofore, when considered from the standpoint of whether the court committed error in refusing to instruct a verdict for the defendants, does not even present a close question, but discloses a condition and state of facts that is very apparent—the top of the car and the handholds were in an unsafe and dangerous condition. While it is true defendants offered evidence that the state of facts as detailed above was exaggerated and untrue, yet this court cannot weigh the evidence, nor consider the evidence most favorable to the defendants when passing upon the question of instructing a verdict for the defendants.

We therefore conclude that the court did not commit error either in overruling the demurrer offered by the defendants to plaintiff's evidence or in failing to instruct the jury to return a verdict for the defendants, and therefore the case is affirmed.

RAINEY, C. J., and HARRISON, JOHNSON, BAILEY, and RAMSEY, JJ., concur.