## MEINHOLTZ v. HENRYETTA GAS CO.

No. 10077—Opinion Filed March 22, 1921.

Rehearing Denied Sept. 13, 1921.

(Syllabus.)

**Malicious Prosecution — Burden of Proof—Probable Cause—Acting on Legal Advice—Motives.**

In an action for malicious prosecution, the burden of proof is upon the plaintiff to prove want of probable cause, and where the uncontroverted evidence shows that the prosecutor laid all the material facts within his knowledge before a competent attorney, and acted in good faith upon the advice given, he is exonerated from all liability; but if there is any evidence reasonably tending to prove that the prosecutor instigated the proceedings with a view of gaining some private advantage, or was actuated by malice, hatred, or ill will, or did not give the attorney a full and fair statement of all the material facts in his knowledge, then the case should be submitted to the jury for their determination.

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by Henry Meinholtz against the Henryetta Gas Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

William M. Mathews (Rutherford & Cosgrove, of counsel), for plaintiff in error.

Joseph P. Rossiter (Hummer & Foster, of counsel), for defendant in error.

JOHNSON, J. This is an appeal from the district court of Okmulgee county; Mark L. Bozarth, Judge.

This action was commenced by the plaintiff in error, who was plaintiff below, against the defendant in error, who was de-

fendant below, to recover damages for false arrest and malicious prosecution.

The essential allegations of the plaintiff were, in substance, as follows: That in 1916 he was the owner of a one-third interest in a tract of land in Okmulgee county, and was in the peaceful possession and full control and enjoyment of the premises; that while he was absent, and without his knowledge and consent, the defendant entered upon his land and laid a pipe line across it, and that when the defendant's trespass came to the knowledge of the plaintiff he notified it to either compensate him in the reasonable value of the easement, or to remove the gas pipe from his land; that the defendant refused to pay the plaintiff anything for the use of his land, and refused to remove the pipe lines as requested, then the plaintiff notified the defendant that if it continued in the illegal use of his property without giving him a reasonable compensation, he would abate the nuisance by removing and destroying the pipes or mains, which interfered with and practically prevented the cultivation and enjoyment of the land; that the defendant persisted in its refusal to either pay or remove the pipe line and notified the plaintiff that if he interfered with its pipe line, it would make an example of him; and that after he received this notice, the plaintiff, in order to protect himself in the rightful use and enjoyment of his land, abated the nuisance by destroying a portion of the pipe line or mains.

The plaintiff alleged that thereafter the defendant, acting by its president, John Smith, maliciously and unlawfully caused the plaintiff to be arrested and brought in the custody of an officer along the public highway and streets, a distance of several miles, to the office of a justice of the peace in the city of Henryetta, and after plaintiff's arrest the president made and caused to be filed an affidavit and information charging the plaintiff with the commission of a crime, that of feloniously and unlawfully breaking and destroying defendant's mains and pipes for conducting gas, and procured a warrant to be issued by the justice of the peace; that the plaintiff, in order to prevent his incarceration, gave bond for his subsequent appearance to answer the charge. The plaintiff was tried upon the charges preferred against him and was finally acquitted.

The plaintiff alleged that his arrest and prosecution were illegal, malicious, and without just or proper cause. and that he suffered great damage, worry, and expense in defending himself against wrongful and un-

lawful charges; that he was compelled to appear in court and pay out for counsel fees and other expenses approximately $500; that he suffered $200 damages for loss of time and attention from his business, and that on account of the humiliation, shame, and anguish he was damaged in the sum of $10,-000. He further alleged that said arrest and prosecution were inspired on the part of the defendant through malice, ill will, and hatred for the plaintiff, and for the purpose of oppressing, humiliating, and degrading him and injuring him in his good name, and that he was entitled to $15,000 punitive damages.

The defendant answered by a general and specific denial, and alleged, in substance, that it consulted with attorneys, including the county attorney, and acted on their suggestions after relating to such counsel all the facts bearing on the case within its knowledge; that the county attorney requested the president of the plaintiff to have complaint filed before the justice of the peace and cause the arrest of the plaintiff.

At the close of the evidence of the plaintiff, the defendant demurred and moved for an instructed verdict in favor of the defendant, which was sustained by the court, whereupon the court charged the jury as follows:

"Gentlemen of the jury, the defendant in this case has interposed a motion for a verdict on the evidence as had in this case, and the court finds that a complete defense has been interposed in this case by reason of the defendant consulting with competent attorneys and also with the county attorney, he having first given them the information that was at hand or that he could possibly have gotten after diligent inquiry, and that he acted in good faith on advice of counsel and also on the advice of the county attorney, which the court holds is a complete defense to this action, the court instructs you to return a verdict for the defendant."

And thereafter, the jury returned a general verdict in favor of the defendant, upon which verdict the court accordingly rendered a judgment, to reverse which this proceeding in error was regularly commenced.

We will first consider the plaintiff's second and third assignments of error, which are: (2) The court erred in sustaining the demurrer to the evidence at the close of the entire case; and (3) the court erred in directing the jury to return a verdict in favor of the defendant in error and against the plaintiff in error.

court in sustaining the demurrer of the defendant to the evidence and motion for an

instructed verdict in its favor is proper in a case where the testimony is in conflict, this court has frequently announced the rule that should be observed by the trial court. One of the more recent cases is that of Ferris et al., Receivers, v. Holiman, Adm., 78 Okla. 251, 190 Pac. 409, where, in paragraph 1 of the syllabus, it is said:

"The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict should the jury find in accordance therewith. Where the evidence is conflicting, and the court is moved to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration, and totally disregarded, leaving solely the evidence for consideration which is favorable to the party against whom such action is leveled." Shields v. Smith, 50 Okla. 548, 151 Pac. 207; Continental Ins. Co. v. R. C. Chance, 48 Okla. 324, 150 Pac. 114; Harris v. M., K. & T. R. Co., 24 Okla. 346, 103 Pac. 758, 24 L. R. A. (N. S.) 858.

The foregoing is the uniform holding of this court, and there are no decisions to the contrary.

The question involved in this appeal has frequently been before this court. In a suit for damages for malicious prosecution, where the prosecution of the plaintiff was instigated by the defendant and the defendant in the damage suit seeks to justify the prosecution on the ground that in such prosecution he relied on the advice of a reputable attorney as is urged in the instant case, this court has uniformly announced the rule as follows:

"In an action for malicious prosecution growing out of a criminal prosecution of the plaintiff, where the prosecutor, before instituting the criminal proceedings, obtained the advice of the county attorney, and then and there communicated to him all the facts bearing on the case of which he had knowledge, or could have obtained by reasonable diligence and inquiry, and acted upon the advice given, honestly and in good faith, the absence of malice is established, the want of probable cause negatived, and an action for malicious prosecution will not lie." El Reno Gas & Electric Co. v. Spurgeon, 30 Okla. 88, 118 Pac. 397; Flamm v. Wineland et al., 41 Okla. 688, 139 Pac. 961; Roby v. Smith et al., 40 Okla. 280, 138 Pac. 141; Central Light & Fuel Co. v. Tyron, 42 Okla. 86, 140 Pac. 1151; Sims v. Jay, 53 Okla. 183, 155 Pac. 615; Jones Leather Co. v. Woody, 67 Oklahoma, 169 Pac. 878; Allison v. Bryan, 50 Okla. 677, 151 Pac. 610.

There is no conflict in the foregoing decisions of this court. The defendant in error seems to rely principally upon the cases of El Reno Gas & Electric Co. v. Spurgeon, and Flamm v. Wineland, supra. These were cases where the trial court sustained the motion of the defendant for an instructed verdict, and in each of these cases this court affirmed the decision of the trial court, but specifically found from the record that the "uncontroverted evidence showed that the prosecutor laid the facts before competent counsel and acted in good faith upon the advice given."

The case of Roby v. Smith, supra, was a case that went to the jury, and there was a verdict for the defendants, and the judgment was affirmed by this court. The cases of Central Light & Fuel Co. v. Tyron, and Sims v. Jay, and Jones Leather Co. v. Woody, supra, were cases that went to the jury, and there were verdicts in favor of the plaintiffs and they were reversed by this court on appeal. The case of Allison v. Bryan, supra, was a case that went to the jury and resulted in a verdict in favor of the plaintiff and was affirmed by this court on appeal.

We think the instant case comes clearly within the rule announced in the latter case, which is stated in syllabus paragraph 1, as follows:

"In an action for malicious prosecution, the burden of proof is upon the plaintiff to prove want of probable cause, and where the uncontroverted evidence shows that the prosecutor laid all the material facts within his knowledge before a competent attorney, and acted in good faith upon the advice given, he is exonerated from all liability; but if there is any evidence reasonably tending to prove that the prosecutor instigated the proceedings with a view of gaining some private advantage, or did not give the attorney a full and fair statement of all the material facts in his knowledge, then the case should be submitted to the jury for their determination."

The testimony in this case shows, without dispute, that the plaintiff was the owner of an undivided one-third interest in a 26-acre tract of land, and was in the exclusive possession of the whole of such tract of land, and that the defendant, without the knowledge or consent of the plaintiff, committed a trespass upon the land by going upon the same and laying certain pipe lines upon the top of the ground to convey its gas to its customers, thereby creating and erecting a nuisance which seriously menaced the use of the premises for agricultural purposes; that when the plaintiff discovered the pipe line upon the premises, he wrote the defendant two letters in which he demanded of the

defendant that it either compensate him for the right of way through his land or remove the pipe line from the same. The defendant failed to reply to these letters. Thereafter, the plaintiff called at the offices of the defendant and talked the matter over with its president, Mr. Smith, in which conversation the plaintiff made the same demand he made in his letters. The plaintiff's demands were that the defendant either pay $1.50 per rod for the right·of way for the pipe line, the price it had paid others, or remove the same from the premises. The defendant failed and refused to do either.

These negotiations between the plaintiff and defendant continued over a period of about 30 days before the defendant caused the arrest of the plaintiff and prosecution against him to be commenced. During this period of 30 days, each party consulted reputable attorneys as to their respective rights.

The testimony shows that the plaintiff's attorneys advised him that in the event the defendant refused to compensate him for the right of way or remove its pipe lines from his premises, he had the right under the law to abate the nuisance by removing the pipe lines from his premises; that the defendant's attorney, including the county attorney, advised Mr. Smith, president of the defendant company, that if the plaintiff tore up the pipe lines, he would violate the law and would be subject to be prosecuted therefor.

The testimony, while in conflict upon the question, tended to show· that during the negotiations the relations between the parties became strained and the feeling between them more or less embittered, and especially so on the part of the defendant's president, Mr. Smith, who at all times acted for the defendant, and that both the plaintiff and Mr. Smith made threats, in that the plaintiff told Mr. Smith that if the defendant failed to remove the pipe line or to compensate him, he would blow it up, and Mr. Smith told the defendant that if he did so, he would send him to the penitentiary; and the testimony showed that the plaintiff fixed a time at which he would carry out his threat, and that Mr. Smith arranged with an officer to go out there, and he did go out there, reaching the premises a short time after the plaintiff dynamited the pipe lines. Said officer arrested the plaintiff without warrant, and took him before a justice of the peace, where a preliminary hearing was had, and the plaintiff executed a bond for his appearance before the district court. The prosecution was pending in the district court for a time,

and was dismissed by the county attorney, which judgment of dismissal became final. We will not discuss the testimony in the case further than to say that in our opinion the same, taken as a whole, tended strongly to challenge the contention of the defendant. that in causing the arrest of the plaintiff and his prosecution, the defendant acted in good faith upon the advice of his attorneys; or, upon the other hand, tended to show defendant was actuated by malice, ill will, and hatred toward the plaintiff. In these circumstances it is the universal holding of this court and is the general rule of law that it became a question for the jury to determine, and not one of law for the trial court; and the trial court, therefore, erred in sustaining the motion of the defendant for an instructed verdict in its behalf. for which error the judgment of the trial court is reversed and the cause remanded for a new trial.

HARRISON, C. J., and PITCHFORD, MILLER, and KENNAMER, JJ., concur.

ELTING, J. (dissenting). The writer of this opinion is unable to concur in the conclusion of the majority of this court, either upon the facts as shown by the record, and the inferences to be drawn therefrom, or as to the law applicable in this case.

The writer will first state a brief outline of the facts in the case. Henry Heinholtz, plaintiff in error, was a joint owner with two other parties in a 23-acre tract of timbered bottom land, located some distance from the city of Henryetta, this state. The Henryetta Gas Company, a corporation, had constructed some pipe lines for the conveyance of gas to the city of Henryetta and furnishing gas to their customers in that city. They had permanent pipe lines constructed near this tract of land in which the plaintiff in error was interested. They placed some two and four-inch lines on and across this land, which they claimed to be temporary lines and connecting lines which they intended to remove when they had finished a system of permanent lines that were under construction. The gas company did not get the consent of the plaintiff in error or his partners in said land to construct said line across the land. The lines in controversy were placed upon the surface. The plaintiff in error and his partners not only had not given their consent, but did not have notice of the placing of the lines upon their lands until some time after they were placed there. As soon as the plaintiff in error got notice of the lines being upon the land, he went to John Smith, president of the defendant in error, the Henryetta Gas

Company, and demanded that the lines be removed or he be paid at the rate of $1.50 a rod for the right of way. The plaintiff in error claimed to represent his partners in the conversation that took place, as well as himself. John Smith testified that he did not refuse to settle with the plaintiff in error, but told him the price he demanded was excessive and unreasonable, and that he could not afford to pay him that price, and claimed that he made an offer to arbitrate it. The plaintiff denies this, and says that Smith told him that he would not pay him, the plaintiff in error, anything, but that he would settle with the other parties interested in the land.

The record shows that the plaintiff in error insisted upon the payment of $1.50 per rod. At the last interview, with John Smith, he informed Smith that if the pipe lines were not removed by the next morning at ten o'clock he would blow them up. The evidence shows that John Smith, president of the defendant in error, went immediately after this threat and consulted the attorney for the company, Mr. Rossiter, and attorneys R. B. F. Hummer, R. O. Foster, and R. E. Simpson, the last named being the county attorney. Attorney Rossiter sent him to the county attorney, R. E. Simpson. Hummer was an attorney, and Foster was a young attorney working in Hummer's office. Smith testified that all of these attorneys advised him that if the plaintiff in error carried out his threat to blow up the pipe lines he would be guilty of a crime, and that he had stated the facts to those attorneys fully and completely and just as he knew them.

Foster's and Hummer's evidence was taken in the trial below and the deposition of R. E. Simpson. the county attorney, was read in the trial below. They corroborated Smith's statement as to making full representation of the facts, and that they had advised him that the plaintiff in error would be guilty of a crime if he blew up the pipe line. Foster testified that he was at the preliminary hearing of the plaintiff in error and that the facts detailed to him when he was sought for advice, were practically the same as those drawn out at the preliminary hearing.

The original complaint against the plaintiff in error was drawn by lawyer Foster, and the county attorney afterwards drew and filed an amended complaint, and testified that he talked again with Smith, and that the facts detailed to him at the time he drew the second complaint were about the same as those detailed to him in the first conversation with Smith.

Simpson was asked this question:

"Q. Now under the facts as related to you, did you advise Mr. Smith that Mr. Meinholtz had committed a crime? A. I did. Q And then did you file your amended complaint upon that information? A. I did. Q. And did you prosecute him? A. I did."

Hummer, Foster, and Simpson, were all three at the preliminary hearing, and they testified that there was no practical difference between what was detailed to them by John Smith and what developed at the preliminary trial. And they advised Mr. Smith that Mr. Meinholtz had committed a crime in blowing up the pipe lines.

The justice of the peace bound the plaintiff in error over, and the plaintiff in error made bond. When the case was docketed in the district court, a demurrer to the complaint was argued and overruled, and afterwards the county attorney dismissed the cause against the plaintiff in error as stated in the record for lack of evidence. and there was no trial upon the merits.

On the morning that the plaintiff in error blew up the pipe line, Don Stermont, deputy sheriff, went out to where this land was located and shortly before he reached the land he heard the explosion and went immediately to the land, found the pipe line blown up, found the plaintiff in error there, and immediately placed him under arrest. From the record it appears that he did not have a warrant for the arrest of the plaintiff in error.

The evidence of the deputy sheriff was taken in the trial below, and he was asked this question:

"Q Upon whose suggestion or advice did you arrest Meinholtz? A. Mr. Simpson, the county attorney."

Upon cross-examination, he was asked the following questions and gave the answers:

"Q. What did you go out there for? A. To arrest him if he blew up the line. Q. And you received your information that he was going to blow it up from Mr. Smith? A. Either he or Mr. Swan; I don't know which one. Q. Did the Henryetta Gas Company's men accompany you out there? A. No, sir; I went by myself."

Henry Meinholtz testified in part as follows:

"Q. Well, what else? A. I called up Mr. Matthews. and he had not been seen by Smith when I called him up. so I went to Mr. Smith's office again, or the Henryetta Gas Company, Smith and Swan's office, about four o'clock in the afternoon and Mr. Smith said: 'Well, we will pay Matthews and Hudson for the right of way, but we will not pay you. Meinholtz.' I said: 'Well, you

are going to pay me, and this is your last chance, you are going to pay me just the same.' Q. How much was that? A. One dollar and a half per rod; I was asking for a dollar and a half, and that is what they are asking I told him, and I said: 'You are going to pay me the same as you are going to pay them, or I will blow up your line by ten o'clock next morning.' He said: 'All right, young fellow, no strings tied, you go ahead.' And I left the office. Q. Was . . . . . . . . . . . . . . . . . . . . there any talk back and forth between you other than what you have said? A. Oh, yes. Q. Tell it all, anything said about having used the land; by way of suggesting to your attention, was anything said about the manner in which they had been getting a right of way in that conversation? A. Now, let me see; no, I think not. Q. What was the next thing you did then? A. I went to my farm house and stayed there over night after leaving his office; I stayed out at my farm house over night and waited there until half past ten expecting and hoping someone would come to settle it maybe, and when they didn't come I put a few sticks of dynamite in my pocket, got on my horse, rode over to where the pipes were and shot them in three places. When I shot the one where the gas pressure was on, it had not been three minutes until an officer came out and arrested me and a lot of Smith and Swan's employes came up there."

The writer of this opinion thinks that the court below was justified in sustaining the demurrer to the evidence. The undisputed facts in this case show that John Smith represented the defendant in error, the Henryetta Gas Company, as its president, received the advice of four attorneys before he took any steps in this prosecution, and displayed unusual caution in the matter of starting the same. He swears that he acted upon the advise of these attorneys. Everything that he did in relation to the prosecution and his entire conduct bears out the idea that he acted upon this advice in perfect good faith.

The admitted facts in this record point very strongly to the fact that the arrest of the plaintiff in error and his prosecution were at the instance of the county attorney.

In the case of Smith v. Austin (Mich.) 13 N. W. 593, the syllabus reads as follows:

"An action for malicious prosecution cannot be maintained against the complainant in a criminal proceeding for which there was probable cause, no matter how evil or malicious his motives may have been in making complaint. Nor can it be maintained if complainant, after fully and fairly disclosing to the prosecuting officer everything within his knowledge which would tend to cause or to exclude belief in plaintiff's

criminality, left him to determine on his sole responsibility whether the proceeding should be instituted, even though the case were not a proper one for prosecution."

But whether the county attorney did institute and pursue this prosecution upon his own motion, yet if John Smith, president of the defendant in error corporation, sought the advice of attorneys, and including the county attorney, and made a full and fair statement of all material facts which he knew or which he had reasonable ground to believe existed at the time, and acted in good faith thereon, this negatives the fact that there was no probable cause, and he is not liable in an action for malicious prosecution. The fourth paragraph of the syllabus of the case of Johnson v. Miller et al. (Iowa) 29 N. W. 743, reads as follows:

"One who, in instituting a criminal prosecution, has acted on the advice of the prosecuting attorney given upon a full and fair statement of all the material facts which he knew, or which he had reasonable ground to believe, existed at the time, is not liable in an action for malicious prosecution."

The last case is a well-considered case, and the facts are somewhat similar to the facts in the case at bar, and as to the consulting of the county attorney and the action of the prosecuting witness thereunder and the inferences of his good faith in acting thereunder are similar to those in the case at bar, but, undisputed, it was a question of law for the court, and not a mixed question of law and fact.

Oklahoma has held the same way in the cases of Goad et al. v. Brown, 73 Oklahoma, 175 Pac. 767; Hopkins v. Stites, 70 Oklahoma, 173 Pac. 449; Jones Leather Co. v. Woody, 67 Oklahoma, 169 Pac. 878.

This last was a suit for damages for the malicious prosecution of an attachment suit, opinion by Galbraith, Commissioner. There was a dissenting opinion, however, by Thacker, Justice.

Robberson v. Gibson, 62 Okla. 306, 162 Pac. 1120; Sims v. Jay, 53 Okla. 183, 155 Pac. 615. The first paragraph of the syllabus of the last cited opinion reads as follows:

"In an action for malicious prosecution growing out of a criminal prosecution of the plaintiff by defendant, where the latter before instituting the criminal proceedings advised with an attorney, and placed before him all the facts bearing on the case of which complainant had knowledge or could have ascertained by reasonable inquiry and

diligence, and defendant acted upon the advice received honestly and in good faith, the absence of malice is established, the want of probable cause is negatived, and a recovery cannot be had."

See, also, a very recent case by Mr. Justice McNeill—First State Bank v. Denton, 82 Okla. 137, 198 Pac. 874.

Suits for damages for malicious prosecution are difficult suits to sustain. The law has thrown many safeguards around those who prosecute for crime. This policy is stated in the third paragraph of the syllabus in the case of Dunnington v. Loeser, 48 Okla. 636, 150 Pac. 874, as follows:

"To adopt a lax rule, favorable to actions for malicious prosecution, is to open the door to such actions, and to close the door to prosecutions, to turn society over to the lawless, and to create a dread on the part of anyone who dares to prosecute."

This is based upon public policy and to assure reasonable safety and freedom in the prosecution of crime. This question of public policy is also fully discussed by Sharp, Commissioner, in the case of Simms v. Jay, heretofore cited.

There is a distinction between suits for false imprisonment and malicious prosecution. In false imprisonment there must be a legal arrest. If no legal arrest, the one making it is liable either for great or nominal damage, and the good faith and the question as to whether there was or was not malice cannot defeat the recovery. The absence of malice can only mitigate the amount of recovery; while for malicious prosecution, malice must always be proven. Malice is a question for the jury to determine. And even though malice be proven, yet if the one who institutes the prosecution acted in good faith and upon probable cause, there can be no recovery, and if after advice from an attorney with full statement of the material facts, the prosecutor acted in good faith thereon, still he is held not to be liable. For a complete and thorough discussion of the elements of malicious prosecution, see 18 R. C. L., beginning on page 9. See, also, case of Robberson v. Gibson, cited herein.

The following is a portion of paragraph 30, pages 48 and 49, 18 R. C. L.:

"Necessity That Advice be Acted on in Good Faith. Another general requirement is that the advice of the attorney, to be available to establish probable cause for his client, must be acted on in good faith. Such good faith not only requires the honest selection of counsel and a fair statement of the facts to him, but also includes

a belief by the prosecutor in his cause and a belief in the soundness of the advice given him by counsel."

The preceding is upon the question of the good faith of the prosecutor in following the advice of an attorney. We do not think, under the undisputed facts in the instant case, that there can be any question as to the good faith of John Smith in taking the action that he did in the prosecution, or that there can be any doubt that he honestly believed that there was a crime committed. It must be borne in mind, furthermore, that the magistrate bound the plaintiff in error over in the preliminary hearing. This, while not conclusive upon the question of probable cause, is prima facie evidence of the fact, and the burden would be upon the plaintiff in error, plaintiff below, to show the absence of probable cause.

Upon the question of the effect the binding over would have upon the question of probable cause, see paragraph 25, page 42, 18 R. C. L. Upon the question of the burden of proof as to probable cause, see paragraph 32, page 51, 18 R. C. L.

It is true, the record shows that the prosecuting attorney dismissed this cause without further prosecution, upon the grounds of insufficient evidence. This raises no presumption of the absence of probable cause. A portion of paragraph 24, page 41, 18 R. C. L., reads as follows:

"Nolle Prosequi. Abandonment or Dismissal of Original Action. Award of Temporary Injunction.—It is generally held that the termination of a criminal proceeding by the entry of a nolle prosequi by the public prosecutor establishes no want of probable cause on the part of the person who caused the prosecution to be instituted."

The controlling question in this case, however, and the one which justifies the court in giving a peremptory instruction in favor of the defense in the instant case, is that the facts upon which John Smith acted are undisputed in this record and constituted a crime and probable cause.

In our statement of the facts we gave the portion of the evidence of the plaintiff in error, Henry Meinholtz, wherein he admitted the act of the blowing up of the pipe line. Our contention is that this statement of Henry Meinholtz amounted to a full and complete confession of a crime under our statutes. Section 2791, Rev. Laws 1910, reads as follows:

"Injuries to Pipe and Wires. Any person who willfully breaks, digs up or obstructs any pipe or mains for conducting gas or water or any works erected for supplying

buildings with gas or water, or any appurtenances or appendages therewith connected, or injures, cuts, breaks down or destroys any electric light wires, poles or appurtenances, or any telephone or telegraph wires, cable or appurtenances, is punishable by imprisonment in the penitentiary not exceeding three years, or in the county jail not exceeding one year, and by fine of not more than five hundred dollars."

This provision of the statutes is found in the chapter on Malicious Mischief. It uses the word "willfully", and maliciousness is not made an element of said offense, and hence maliciousness is not an element of said offense. The only thing required to be shown is to show that the act was done willfully. If maliciousness were made an essential element of this offense, then all this evidence about the preliminaries leading up to the act might be material as bearing upon the question as to whether or not the blowing up of the pipe line was malicious. The blowing up of a pipe line which is in operation conveying gas to supply the public with a needed commodity is an offense against a public instrumentality, and any one who willfully blows the same up is guilty of an offense under this statute.

We have examined the case of Colbert v. State, found in 7 Okla. Criminal Rep., page 701, which case is mentioned in the record in the instant case, and we find that in the statute under which Colbert was prosecuted the word "maliciously" is used, and hence malice was an element.

The word "willful" is construed in section 2819, Rev. Laws 1910, as follows:

"Willfully Defined. The term 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage."

For a further construction of this statute, see the following cases: Atchison, T. & S. F. Ry. Co. v. State, 35 Okla. 532, 125 Pac. 721; Lightle v. State, 5 Okla. Cr. 264; Commonwealth v. Graustein & Co. (Mass.) 95 N. E. 97; People v. Wolfrom (Cal.) 115 Pac. 1089; People v. O'Brien (Cal.) 31 Pac. 45.

The acts of the plaintiff in error are undisputed, and in fact are confessed. And the question as to whether those acts, as defined in the quoted section, constituted a crime, was a question of law for the trial court, and if an act so confessed constituted a crime, then the defendant below, defendant in error herein, could not be held liable in an action for malicious prosecution. The guilt or innocence of a plaintiff in a suit

for malicious prosecution is always a question for consideration in said suit. And to repeat, where the acts done by the plaintiff are not in dispute, but are admitted, the question as to whether those acts constituted a crime is a question of law for a court, and not a question of fact for a jury.

In the case of Parli v. Reed (Kan.) 2 Pac. 635, the opinion is by Mr. Justice Brewer, and the discussion is relevant to the above deduction we have drawn. We quote the following from said opinion:

"Again, the court declared the prosecution without probable cause, and of this plaintiff in error complains. The ruling was correct. The court passes upon the law. It is its province to say what constitutes probable cause, for that is a matter of law, and if upon the undisputed facts there was no probable cause, it was its duty to so instruct the jury. Wells, Law & Fact, section 291; Besson v. Southard, 10 N. Y. 240; Stone v. Crocker, 24 Pick. 81; Travis v. Smith, 1 Pa. St. 234; Hill v. Palm, 38 Mo. 13; Wells v. Parsons, 3 Har. (Del.) 505. Upon the facts, and taking them to the fullest extent and with every possible inference in favor of the defendant, there was no probable cause. It seems that plaintiff entered into a written contract with defendant to build an addition to his hotel. He proceeded with the work, received the first payment July 4, 1882, and the second, August 1, 1882. Of the first payment, and plaintiff's disposition of it, no complaint is made. The second payment was made by defendant at his residence, about 18 miles from the hotel. Plaintiff had ridden there on horseback in the morning, received the money ($350), and claimed to have lost it out of his pocket while riding home. Of the truth of this statement it seems some suspicions were aroused; and defendant believed that he had not lost it, but intended to make no further payments to his employes and materialmen, and to leave the state with this money. Hence, he commenced this prosecution for embezzlement. Now, suppose plaintiff had not in fact lost the money; that he falsely represented that he had lost it; that he intended to make no further payments to the employes and materialmen, but to leave the state with the money; he had not committed the crime of embezzlement. The money when paid to him was his money. He had earned it by his part performance of the contract, and a man cannot embezzle his own money. He may fail to pay his debts, even though he have money of his own enough therefor in his pocket; but still he does not commit the crime of embezzlement by such failure. So that, if all that was suspected was true, plaintiff had not been guilty of the crime charged, and of course there was no probable cause to believe him guilty thereof."

This reasoning is applicable to the instant case notwithstanding the fact that the court

facts to have constituted a crime, it would held the admitted facts to not constitute a crime, but did hold their interpretation to be a question for the court. And, of course, if the court had determined the admitted have been his duty to have so held, and to have instructed a verdict for the defendant.

But whether or not we are right in our conclusion as to whether the admitted acts constituted a crime under our statutes, still we hold that the admitted facts do show the existence of probable cause. The very fact that this court and good lawyers might differ, and do differ, as to whether a crime under the undisputed facts in the instant case was committed is itself sufficient to show the existence of a probable cause and that reasonable men would be justified in pursuing a prosecution under such undisputed facts.

As to what constitutes probable cause, it is defined and limited by section 20, 18 R. C. L. 35, a portion of which section reads as follows:

"As to what constitutes probable cause in the sense in which the term is used in actions for malicious prosecution, many definitions, differing more or less in their language, are to be found in the decisions. Thus, for instance, probable cause for a criminal prosecution has been defined as 'a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the party is guilty of the offense with which he is charged;' as 'the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the offense for which he was prosecuted,' and as 'such facts and circumstances as, when communicated to the generality of men of ordinary and impartial minds, are sufficient to raise in them a belief or real grave suspicion of the guilt of the person.' * * * That is, if a reasonable man would have believed and acted under the circumstances as the defendant did, there would be probable cause; otherwise not."

In further elucidation of this proposition, we quote the following portion of section 21 of the same authority:

"The question of the presence or absence of probable cause for a criminal prosecution does not depend upon the guilt or innocence of the accused, or upon the fact whether or not a crime has been committed. If a person acts upon appearances in making a criminal charge, and the apparent facts are such as to lead a discreet and prudent person to believe that a crime has been committed by the party charged, although it turns out that he was deceived, and the party accused was innocent, yet he will be justified. Thus, for instance, it has been held that probable cause exists for the prosecution of one for violation of a statute, although the act is not in fact such violation, where the statute is of such doubtful construction that the prosecutor was thereby induced honestly to believe that it was so."

We contend that, under the admitted facts bearing upon the question of probable cause as shown in this record, there was nothing for the trial court to submit to the jury, but that it was a question of law for the determination of the court, since under the rule laid down in the preceding quotations, and under the admitted facts, reasonable minds would conclude that there was probable cause to believe a crime had been committed.

The rule is clearly stated in the following portion of paragraph 39, pages 58 and 59, 18 R. C. L:

"The general rule of the common law, sustained by the overwhelming weight of authority, both in England and America, is that what facts, and whether particular facts, constitute probable cause is a question of law, which the judge must decide upon the facts found to exist in the particular case, and which it is error for him to submit to the decision of the jury. While the jury are to find what facts do exist, where the evidence is conflicting, the question of whether, upon the facts as proved and found, probable cause has or has not been made out is a question which the court must decide. For this reason probable cause has often been said to be a 'mixed question of law and fact'. If there is no dispute upon the facts, whether or not there was probable cause for the institution of the former proceeding is a question to be decided by the court alone." (Citing in a note a long line of authorities.)

The following is from the case of Robberson v. Gibson, heretofore cited:

"In an action for malicious prosecution, the question of probable cause, where the substantial facts relating thereto are admitted, whether or not they are sufficient to constitute probable cause is a question of law for the determination of the court, Bell v. Keepers, 37 Kan. 64, 14 Pac. 542; Parli v. Reed. 30 Kan. 534, 2 Pac. 635; Turney v. Taylor. 8 Kan. App. 593, 56 Pac. 137."

The law as laid down in the case of Robberson v. Gibson has been accepted as the law of this court in numerous cases.

When this case goes back for a new trial under the majority opinion of this court, and when the trial court instructs the jury under the law controlling courts in their instructions in malicious prosecution, the court will have to state the facts as shown by the evidence bearing on the question as

to whether a crime has been committed or whether there was probable cause, and they not being in dispute, it will be his duty to tell the jury whether they constituted a crime, and if he holds that a crime was committed, that ends the case; and even if he does not hold that a crime was committed, and he holds that there was probable cause, that also ends the case; and in either event in favor of the defendant in error. So where is there anything to submit to a jury?

We, therefore, think that the opinion of the majority of this court is wrong in reversing the cause for a new trial.

KANE, McNEILL, and NICHOLSON, JJ., concur.